UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JAMES H. DAVIS, B41795,  )
　　　　　　　　　　　　　)
　　　　　　　Petitioner,  )
　　　　　　　　　　　　　)
　　　v.　　　　　　　　　)　　Case No. 19-cv-01287-JES
　　　　　　　　　　　　　)
TERI KENNEDY, Warden,  )
　Pontiac Correctional Center,  )
　　　　　　　　　　　　　)
　　　　　　　Respondent.  )

# ORDER AND OPINION

This matter is now before the Court on Defendant James Davis's Petition (Doc. 1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254, the United States Response (Doc. 8), and the Petitioner's Reply (Doc. 9). For the reasons stated herein, Petitioner Davis's Petition (Doc. 1) is DENIED and the Court declines to issue a Certificate of Appealability.

## BACKGROUND[1]
**(1) James Davis's Trial and Direct Appeal**

　　The State of Illinois charged Petitioner James Davis with predatory criminal sexual assault of a child, a Class X felony, in July 2011, in addition to indecent solicitation of a minor. *People v. Davis*, 2015 IL App (4th) 130019-U, at 1, 2015 WL 303413, at *1; Doc. 8-2, at 1. The case proceeded to a jury trial where Davis was convicted and later sentenced to thirty-five years for the predatory criminal sexual assault of a child (five-year old minor T.P.), with a consecutive fifteen-year sentence for the indecent solicitation of a minor (eight year old K.P.). *Id.* The trial evidence showed that while the children's mother, Gloria P., was asleep, Petitioner touched T.P.'s

---

[1] The following facts and procedural posture relevant to Davis's § 2254 Petition are drawn from the state court record. This Court will presume that the state court's factual determinations are correct for the purposes of habeas review unless Petitioner points to clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Kidd v. Lemke*, 734 F.3d 696, 703 (7th Cir. 2013).

mouth with his penis and asked K.P. to perform oral sex on him. Doc. 8-2, at 1-7. The facts of the investigation and trial are more fully recounted in the appellate court's opinion, but the Court will briefly summarize the facts relevant to the issues raised in Davis's Petition.

During the trial, the children's mother, Gloria P., testified that at 8:45 a.m. on July 4, 2011, she awoke to Petitioner knocking at her door asking for a place to stay for the morning. *Id.* at 4-5. The two briefly spoke before falling asleep in Gloria P.'s bed. She testified that Petitioner woke her to ask to use the bathroom before her falling asleep again. Doc. 8-15, at 356-58. Gloria P. testified that she was asleep until she woke up to a call from her mother at 10:16 a.m. and Petitioner had not yet come back from the bathroom. *Id.* at 358-59.

Two minutes later, K.P. ran into Gloria's bedroom and informed her that a "man out there just told her to suck his dick." *Id.* at 359-60. When Gloria left the room, she testified that she found Petitioner on the couch with "his fly [ ] unzipped" and asked the man to leave. *Id.* at 360. The Petitioner left the house while K.P. was talking with her mother; Gloria's youngest, T.P., informed Gloria that "the man on the couch tried to stick his pee-pee in her mouth." *Id.* T.P. told Gloria that she "had closed her mouth before he got a chance to do so, but it had touched her bottom lip." *Id.* at 363. Gloria testified that she "went looking for [Petitioner]," but returned ten or fifteen minutes later to call the police. *Id.* at 363-64. Upon her return, Gloria called the police and told them that the assault happened five minutes ago. She explained to Officer Atteberry what transpired when he arrived. Doc. 8-2, at 6. The following day, Gloria brought her children to the Child Advocacy Center to be interviewed by a child-protection advanced specialist, Barbara Traylor, with the Illinois Department of Children and Family Services (DCFS). *Id.* at 365-66; Doc. 8-2, at ¶ 8.

Trial counsel for Petitioner raised various discrepancies in the timeline between Gloria's testimony and her phone call with the police. *Id.* at 367-78, 381-83. Furthermore, Petitioner's counsel pointed to various other discrepancies with the testimony and interviews of K.P. and T.P. throughout.

At trial, Petitioner brought forward witnesses on his behalf to testify. These witnesses' testimonies had similar discrepancies with regards to the timeline of events on that morning. Maurice Conley and Tyrone Jasper testified they were drinking with Petitioner into the early morning hours of the fourth. Doc. 8-18, at 501-10. They verified that they went to Walmart with Petitioner around 6.a.m. to purchase more alcohol and came back to drink it with him. Doc. 8-2, at ¶ 82-86. Additionally, video evidence confirms that Petitioner was at Walmart at approximately 6:02 a.m. Doc. 8-18, at 426-30. However, neither recalled what time Petitioner left. Doc. 8-2, at ¶ 82-86. James Davis was found guilty of predatory criminal sexual assault and indecent solicitation of a minor at the conclusion of the jury trial in the Circuit Court of Champaign County. Petitioner's girlfriend and sister also testified that Davis was with them at the time of the assaults; however, their accounts of the morning differed and did not reflect Davis's account of the event to Det. Robb Morris. Doc. 8-2, at ¶ 100.

**2) Davis's Appeals**

Davis filed a posttrial motion for a new trial in November 2012. In November 2012, that court denied his motion and sentenced Davis to thirty-five years' imprisonment for the predatory criminal sexual assault conviction and fifteen years' imprisonment for the indecent solicitation of a minor conviction, to be served consecutively. Davis appealed the jury's finding of guilt beyond a reasonable doubt, and the Fourth District Appellate Court of Illinois affirmed the convictions

and sentences on January 22, 2015. *See generally* Doc. 8-2; *People v. Davis*, 2015 IL App (4th) 130019-U, at 1.

**3) Petition for Leave to Appeal to the Illinois Supreme Court**

On April 24, 2015, Davis filed a petition with the Illinois Supreme Court seeking leave to appeal ("PLA") the Illinois appellate Court's decision affirming his conviction and sentence. Doc. 8-6. On September 30, 2015, the Illinois Supreme Court denied his request. Doc. 8-7.

**4) Postconviction Petitions**

On June 13, 2016, Petitioner Davis filed a post-conviction petition pursuant to 725 ILCS 5/122 arguing the evidence was insufficient to establish his guilt beyond a reasonable doubt, ineffective trial counsel for failure to retain an expert on eyewitness reliability, and ineffective appellate counsel for failing to raise trial counsel's ineffectiveness on that issue. Doc. 8-8. In his petition, Davis did not attach an affidavit setting forth the proposed testimony of such an expert. Doc. 8-9, at ¶ 36-40. Instead, Davis attached transcript of testimony from T.P., K.P., and Gloria; he underlined the "allegedly problematic portions" relating to eyewitness identifications. *Id.* at ¶ 39.

On July 22, 2016, the trial court summarily dismissed Davis's arguments. *Id.* at ¶ 27. The trial court found that "any alleged errors" regarding eyewitness identifications were addressed in his direct appeal and his appellate counsel was "not ineffective." *Id.* The state appellate court affirmed the trial court's decision on January 29, 2019. Doc. 8-9, at ¶ 1; Doc. 8-13, at 3. Davis filed a petition for leave to appeal with the Illinois Supreme Court on February 26, 2019 to review the state appellate court's decision. Doc. 8-13, at 2. On May 22, 2019, the Illinois Supreme Court denied Davis's PLA. Doc. 8-14. The present Petition for a writ of habeas corpus followed. *See generally* Doc. 1.

**LEGAL STANDARD**

"Under the Antiterrorism and Effective Death Penalty Act ('AEDPA'), [a] federal court may grant a federal petition for habeas corpus only if the state court's ruling on the federal constitutional question 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Snow v. Pfister*, 880 F.3d 857, 863–64 (7th Cir. 2018) (quoting 28 U.S.C. § 2254(d)). Thus, "[a] petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair minded disagreement." *Id.* at 864 (quoting *Campbell v. Reardon*, 780 F.3d 752, 761–62 (7th Cir. 2015)).

In addition to the merits of a petitioner's claims, federal courts "must consider which claims have been procedurally defaulted." *Id.* There are two varieties of procedural default. First, procedural default occurs "where the state court declines to address a petitioner's federal claims because the petitioner did not meet state procedural requirements[.]" (quoting *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016)). *Id.* In order for procedural default to apply in this circumstance, the state court's rejection of a federal claim based on a procedural rule must be "both independent of the federal question and adequate to support the judgment." *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017). Second, "[a] state prisoner can procedurally default a federal claim if he fails to 'fairly present' it 'throughout at least one complete round of state court review, whether on direct appeal of his conviction or in post-conviction proceedings.'" *Clemons*, 845 F.3d at 819 (quoting *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014)). Thus, "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by

5

invoking one complete round of the State's established appellate review process," which in Illinois requires the petitioner to "include his claims in a petition for leave to appeal to the Illinois Supreme Court." *Snow*, 880 F.3d at 864 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–46 (1999)).

Finally, "[p]rocedural default may be excused ... where the petitioner demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.' " *Snow*, 880 F.3d at 864 (quoting *Thomas*, 822 F.3d at 386).

## DISCUSSION

### *(1) Davis's Insufficient Evidence Claim is Meritless*

Petitioner's sufficiency of evidence claim fails because the Illinois appellate court's decision on this issue is neither contrary to nor an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979). Under *Jackson*, due process is satisfied if, viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis original). In order to prevail on a claim of insufficient evidence in federal habeas proceeding, a petitioner must show that, even after the deference to the state court decisions required under § 2254(d), the factfinder made an objectively unreasonable determination. *Cavazos v. Smith*, 565 U.S. 1, 7 (2011). Therefore, it is also a difficult claim to raise because it requires "a reviewing court 'faced with a record of historical facts that supports conflicting inferences [to] presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and [to] defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326). It is not enough for a court to disagree with the

outcome or verdict, it is the function of the jury to decide what conclusions should be drawn from the evidence admitted at trial. *Cavazos*, 565 U.S. at 2 (citing *Jackson*, 443 U.S. at 319).

The Illinois appellate court's decision finding the evidence at trial sufficient was neither contrary to, nor an unreasonable application of *Jackson*. Respondent asserts in its Answer that the appellate court correctly identified and recited the *Jackson* standard of review in its decision. Doc. 8-2, at 9; Doc. 8, at 14. After evaluating Petitioner's claims, the appellate court determined—when viewing the evidence in the light most favorable to the State—that a rational trier of fact could have found the essential elements. Doc. 8-2, at ¶ 139.

After evaluating Petitioner's claims on appeal, the state appellate court reasonably applied the *Jackson* standard as well, in holding the evidence sufficed to prove that he committed both underlying offenses of the "predatory criminal sexual assault" of T.P. and "indecent solicitation" of K.P. Doc. 8-2, at 13; Doc. 8, at 14. The *Jackson* standard involves reviewing all of the evidence in light most favorable to the State and determining whether *any* rational trier of fact could find the essential elements of the claims. In determining the sufficiency of the convictions, courts should evaluate both the evidence and each element of the charge.

The essential elements the State must prove to sustain a conviction for predatory criminal sexual assault are: (1) the accused committed "an act of sexual penetration" on a child under the age of thirteen, through "any contact, however, slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person"; and (2) the defendant was at least seventeen years old. 720 ILCS 5/11-0.1 (2011). To sustain a conviction of "indecent solicitation of a child," the State must prove that the accused (1) "knowingly solicit[ed] a child" under the age of seventeen "to perform an act of sexual penetration or sexual conduct"; (2) with the intent to commit either an "aggravated criminal sexual assault, criminal sexual assault,

7

predatory criminal sexual assault of a child, or aggravated criminal sexual abuse"; and (3) the accused was at least seventeen years old at the time of the offense. 720 ILCS 5/11-6(a)-(b) (eff. July 1, 2011 to Jan. 24, 2013).

Here, Petitioner Davis argues that his conviction should be overturned because the evidence was insufficient to demonstrate, when viewing the evidence in light most favorable to the State, that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Doc. 1, at 16-17. Davis's argument is unavailing for multiple reasons. The evidence demonstrated that a rational trier of fact could have found each element of the crime. First, James Davis was thirty-six years old at the time of the offense, so the age element is not at issue. Doc. 8-18, at 425. Gloria testified and identified Davis as having been the only man present at her apartment on July 4, 2011, after K.P. informed her what happened. *See id.* at 352-360; 373. When Gloria walked out into the living room, she found Davis on her couch with his "fly [ ] unzipped." *Id*. at 360. Promptly after this identification, Gloria's younger child, T.P., informed Gloria that "the man on the couch had tried to stick his pee-pee in my mouth." Doc. 8, at 15. The victims' accounts of the events were largely consistent with their interviews with DCFS the following day as well as at trial months later. Their accounts were also largely consistent with Gloria's report given to Officer Atteberry and her testimony given at trial. Doc. 8-2, at ¶ 7-23, 28, and 37.

Based on this evidence, despite Petitioner's contentions, the state appellate court reasonably determined that "*a* rational trier of fact could have found the essential elements of" predatory criminal sexual assault and indecent solicitation of a minor "beyond a reasonable doubt." Doc. 8-2, at ¶ 139 (emphasis added). Furthermore, § 2254(d) bars relitigation of the same claim.

Petitioner contends that no rational juror could have found him guilty beyond a reasonable doubt due to a lack of physical evidence, the identification testimony was "weak," and inconsistent witness testimony. Doc. 1, at 17. Petitioner also contends that he was unable to commit the crimes as he had an alibi defense, corroborated by four witnesses. *Id.* at 18. These arguments are unpersuasive. However, the jury heard many of these contentions (support) at trial and were unconvinced.

The Court applies a "twice-deferential" standard in reviewing a state court's ruling on a sufficiency of the evidence claim. *Parker v. Matthews,* 567 U.S. 37, 43 (2012). After all, it is the function of the jury to decide what conclusions should be drawn from the evidence admitted at trial. *Carvazos*, 565 U.S. at 2 (citing *Jackson*, 443 U.S. at 319).

The jury was presented testimony from Forensic Scientist Dana Pitchford, who testified that no physical evidence collected from T.P.'s mouth or K.P.'s arm, such as DNA, matched Petitioner. Doc. 8-18, at 400, 403, 406-11, 413-14; *see also* Doc. 8-2, at 6. However, Dana Pitchford would later clarify that given "the minimal touch contact alleged, she would not have expected to find DNA from the attacker." Doc. 8, at 8; Doc. 8-18, at 409-10. The lack of physical evidence, by means of DNA, was to be "expected." Doc. 8-8, at 8. The Respondent properly asserts that a lack of direct evidence will nevertheless be sufficient to sustain a conviction where the circumstantial evidence established guilt beyond a reasonable doubt. *Id.* at 16 (quoting *Fisher v. Jackson*, 2019 WL3776752, at *5 (N.D. Ill. 2019). A rational juror could have believed K.P. and T.P.'s accounts of the events. When supplemented with their individual identifications of Davis in the photographic lineup and Gloria's corroborating testimony of Davis being on the couch with "his fly [ ] unzipped," it became increasingly rational to believe. Doc. 8-18, at 437-40, 360.

9

In sum, it was not unreasonable for the jury to find that Gloria, T.P., and K.P. correctly identified Davis and that Davis had sexually assaulted T.P. and solicited K.P. The Illinois appellate court's decision did not run afoul of clearly established federal law, and consequently, the Court cannot grant habeas corpus relief based on Petitioner's claim of insufficient evidence.

*2) Davis Procedurally Defaulted his Ineffective Assistance of Trial Counsel Claim*

"State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including submission to the state supreme court for discretionary review, to avoid procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999). While Davis presented his claim that direct appeal counsel was ineffective for failing to raise trial counsel's ineffectiveness in his pro se state postconviction petition, he never raised the separate claim of ineffective assistance of trial counsel in state court. Doc. 8-10, at 12-13.

The trial court summarily denied Davis's petition for failure to state a constitutional claim, which he later appealed. The appellate court affirmed the trial court's decision and only addressed the merits of the claim to determine whether he suffered prejudice from direct appeal counsel's failure to raise trial counsel's alleged deficiencies. Doc. 8-9, at 5. The appellate court did not address trial counsel's alleged ineffectiveness. Therefore, Petitioner has procedurally defaulted his claim of ineffective trial counsel as he failed to invoke one complete round of the state's established appellate review process. *See Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004) ("[A]n assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues.") *Id.* ("[T]he fact that the ineffectiveness claim was raised at some point in state court does not mean that the state court was given the opportunity to address the underlying issue that the attorney neglected to

raise.") ; *see generally Perruquet v. Briley,* 390 F.3d 505, 513-14 (7th Cir. 2004) (comity requires the state be given an opportunity to pass on the "same claim" in state court).

### 3) Davis's Claim of Ineffective Assistance of Direct Appeal Counsel is Meritless

The state appellate court's denial of Petitioner's claim of ineffective assistance of appellate counsel in his post-conviction appeal was a reasonable determination considering the evidence presented. *See generally* Doc. 8-9. His claim is therefore precluded from habeas relief. *See* 28 U.S.C. § 2254(d).

In order to demonstrate ineffective assistance of counsel, one must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness; and (2) but for counsel's errors, there is a reasonable probability the outcome of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 688, 694. When evaluating counsel's performance, courts apply a "highly deferential" review with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Additionally, a defendant may demonstrate counsel's performance has prejudiced him only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The *Strickland* standard does not require counsel to raise every "non-frivolous issue on appeal." *Martin v. Evans*, 384 F.3d 848, 852 (7th Cir. 2004). Counsel only falls below the reasonableness standard if they "fail to argue an issue that is both obvious and clearly stronger than the issues raised." *Id.* at 851. Defendants are prejudiced by appellate counsel only when "there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Johnson v. Thurmer,* 624 F.3d 786, 793 (7th Cir. 2010) (internal quotation omitted).

The proper standard of review for this Court, under § 2254(d)(1), is doubly deferential to the last state court to address the claim on its merits. *Crockett,* 807 F.3d at 166. Here, the last state court to review Davis's claim on its merits was the state appellate court. *See generally* Doc. 8-9. The state appellate court determined that there was "no reasonable probability that but for appellate counsel's assumed error, the outcome would have been different." Doc. 8-9, at 5. Since Petitioner failed to establish what testimony an expert would have offered and how it would have produced a different result, he is unable to demonstrate prejudice. *See United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir. 1991) (to support claim of ineffective assistance, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or [in an] affidavit"); *Brown v. McGinnis*, 922 F.2d 425, 428 (7th Cir. 1991) ("[T]o show prejudice, the defendant must make a comprehensive showing of what the potential witness'[s] testimony would have been and how it would have produced a different result.").

Here, the record shows trial counsel fully and "systemically explored" the inconsistencies and discrepancies throughout cross-examination and closing arguments. Doc. 8-9, at 5. In his closing argument, trial counsel argued: K.P. did not identify the Defendant in court; T.P.'s in-court identification was ambiguous; that K.P., T.P., and Gloria all had a different timeline of the incident; that K.P., T.P., and Gloria gave different descriptions of what defendant was wearing, and that T.P. testified she did not see her attacker's face. Doc. 8-13, at 8. The trial court then instructed the jury of the "heightened scrutiny" one must review testimony with when a witness "previously provided an inconsistent statement." Doc. 8-18, at 627, 629-31.

The decision to call an expert often depends on trial tactics and strategies and the balancing of limited resources. *Harrington v. Richter,* 562 U.S. 86, 107 (2011). Trial counsel adequately and thoroughly cross-examined and argued the shortcomings and issues with

eyewitness identification. Doc. 8-9, at 5. Furthermore, without attaching the expected testimony or affidavit of what an expert of eyewitness identification would have said or offered to his post-conviction petition, Davis fails to show how he was prejudiced. The state appellate court reasonably determined that even if appellate counsel had raised the trial counsel's ineffectiveness, there was no reasonable probability Petitioner could show it would have succeeded. Thus, Davis has not demonstrated that the state appellate court's holding was objectively unreasonable.

## CERTIFICATE OF APPEALABILITY

Where a federal court enters a final order adverse to the petitioner, "the district court must issue or deny a certificate of appealability." 28 U.S.C. § 2254, Rule 11(a). To obtain a certificate, the petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where, as here, a district court has denied a petition on procedural grounds, in order to obtain a certificate, the petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 478. The Court declines to issue Davis a certificate of appealability because it is not debatable that Davis failed to preserve his claims in state court, and his claims clearly lack merit. Accordingly, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the reasons set forth above, Petitioner Davis's Petition (Doc. 1) for Writ of habeas corpus under 28 U.S.C. § 2254 is DENIED and the Court declines to issue a Certificate of Appealability.

This matter is now terminated.

Signed on this 21st day of August, 2020.

s/ James E. Shadid  
James E. Shadid  
United States District Judge